**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**VICTOR BERNARDEZ,**

                                        **Petitioner,**

             - *against* -

**BRUCE BANNON, WARDEN,**

                                        **Respondent.**

---

**12 Civ. 4289 (KMK)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.**[1]

On May 31, 2012, Petitioner Victor Bernardez ("Petitioner"), filed a petition for a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254, challenging his June 3, 2008, judgment of conviction for Burglary in the Second Degree (NY Penal Law § 140.25), Unlawful Imprisonment in the Second Degree (NY Penal Law § 135.05), and Sexual Abuse in the First Degree (NY Penal Law § 130.65), and his determinate term of imprisonment of seven years to be followed by five years of post-release supervision.  D.E. 2.  The petition asserts that trial counsel provided ineffective assistance.  D.E. 15.[2]

For the following reasons, I conclude, and respectfully recommend that Your Honor conclude, that this Petition should be dismissed in its entirety.

---

[1] On July 11, 2012, Petitioner's application was referred to this Court by the Honorable Kenneth M. Karas.  D.E. 8.

[2] On April 21, 2016, Petitioner's counsel informed the Court that Petitioner had been deported since the filing of the petition. This Court, however, retains jurisdiction to issue a report and recommendation on the petition. *See So v. Reno,* 251 F. Supp. 2d 1112, 1120 ("The 'in custody' requirement is satisfied if the petitioner files the habeas petition before being deported") (E.D.N.Y. 2003).

# BACKGROUND

### A. The Crime

<u>The People's Case</u>

In 2007, B.A.[3] was a high school student living in an apartment complex in New Rochelle, New York. At that time, Petitioner was a porter who worked in her building. According to B.A., in May of 2007, Petitioner approached her in the lobby, put his arms around her, and kissed her twice on the lips. B.A. said she had to go and left. The only person she told about this incident was her neighbor and friend, Sherine Fields. Fields was a registered nurse and was "like a sister" to B.A.. T. 43-45.[4]

On June 21, 2007, at approximately 2:00 PM, B.A. left her building through the lobby to pick up groceries from her mother, who was waiting outside of the building in her car. B.A. said hello to Petitioner on the way out of the building. T. 47-49. B.A. re-entered the building after collecting the groceries from her mother and rode the elevator up to her floor along with Petitioner. After B.A. entered her apartment and heard the door close, she looked behind her and saw that Petitioner was in her apartment, and assumed that Petitioner must have come in behind her. B.A. stated, "what are you [] in my house, get out of my house now, you are not suppose[d] to be in here...." Petitioner then put his left arm around her neck, pulled her close to him, and began kissing her neck, ears, and face. B.A. pushed Petitioner away while asking him to stop, leave her alone, and get out. Petitioner then groped her breasts over her shirt and inserted his finger into her vagina. B.A. pushed Petitioner away and told him to "get out right now." T. 50-58. Petitioner looked at B.A. and said "come on," and B.A. said, "no, get out." B.A. then left

---

[3] In light of the nature of the crime in this case, the Court will refer to the victim by her initials in order to protect her privacy.

[4] Numerals preceded by "T." refer to the transcript of Petitioner's trial.

the apartment and rode the elevator to the lobby.  Petitioner tried to enter the elevator with B.A. but B.A. told him to take the stairs and he complied.  B.A. was embarrassed and in shock and disbelief.  B.A.'s mother was still outside the apartment building but B.A. did not tell her what happened because she was embarrassed and scared.  T. 58-61, 82.

After exiting the building, B.A. took her lunch from her mother, reentered the building, and entered the elevator along with a neighbor. Petitioner got on the elevator with them and all three got off on B.A.'s floor.  Petitioner and the neighbor walked to the left and B.A. walked to the right.  Petitioner then "doubled back" toward B.A.  Petitioner "bl[ew] kissing sounds at" B.A. and said "come on."  Petitioner came "toward [B.A.] again" but B.A. pushed him away and said that she would not open her door.  Petitioner then returned to the elevator and B.A. entered her apartment and locked the door behind her. T. 61-65.

That afternoon, B.A. spoke with Sherine Fields and told her that Petitioner had touched her vagina and breasts; B.A. told her "the whole story."  Fields told B.A. that if she did not tell her parents what had happened, Fields would tell them, and that as a nurse she was required by law to report "something that happens."  On the evening of Sunday, June 24, 2007, after attending church, B.A., Fields, and B.A.'s mother returned to B.A.'s apartment.  B.A. went into her room.  B.A. left her room approximately fifteen minutes later and saw her mother, stepfather, and Fields near the dining room table with two police officers – Officer Vincent Marion and Officer Kenny Hurst.  Five minutes later, Petitioner entered the apartment and sat near the door. The officers and B.A.'s mother asked B.A. what had happened.  She told them that Petitioner had come into her apartment earlier that day and had kissed her and touched her over her clothing. She did not provide specific details because she "was in a room with two officers I haven't met," Petitioner, and her stepfather.  Petitioner said that B.A. was a liar and said "I swear I didn't touch

her, she's a little girl, I have kids." Petitioner's stepfather then spoke with Petitioner and Petitioner said "I'm sorry for kissing her." At that time, B.A. did not want to pursue charges; she wanted to "think it over." T. 83-93, 104, 138, 146, 172-75, 216-20, 252, 256-58.[5]

On July 12, 2007, Petitioner decided to "press charges." That day, she went to the police station and spoke with Detective Denise Waters. B.A. told her the "whole story of what happened and when it happened and every detail…." B.A. told Detective Waters the whole story because Detective Waters was female and because she felt more comfortable with her.[6] T. 95

The Defense Case:

Trevor Bolden, Petitioner's union representative, testified that he had instructed Petitioner and his wife to go to the police station and correct what Petitioner perceived to be an error in the police report regarding the incident. T. 305. Martha Bernardez, Petitioner's wife of twenty years, testified that she and Petitioner mostly conversed in a dialect of Spanish. T. 306-11. Satuyee Toussaint, a neighbor of Petitioner, and Rolando Eguity, a lifelong friend of Petitioner, testified that Petitioner had a good reputation for peacefulness and respectfulness toward women.

---

[5] According to Fields, Petitioner said, "it's true" after B.A.'s stepfather spoke with Petitioner. According to B.A.'s mother, Petitioner said "yes" when B.A.'s mother said, "did you or did you not." Defense counsel elicited from Fields that B.A. had told the officers that Petitioner touched her in the elevator while she was holding groceries and then followed her into her apartment. T. 150-53, 220. Similarly, during counsel's cross-examination of Officer Marion, counsel elicited that B.A. had told Officer Marion that "it happened in the elevator." T. 261-62. During counsel's cross-examination of B.A.'s mother, counsel elicited from B.A.'s mother that B.A. did not tell the officers that Petitioner had touched her in the elevator. T. 233.

[6] During counsel's cross-examination of B.A., defense counsel asked B.A. if she had told Officer Marion that Petitioner attacked her in the elevator. Petitioner said, "no." Counsel further elicited that B.A. had told Officer Marion that Petitioner touched her over her clothing but did not touch her under her clothing. When counsel asked B.A. if she had told Officer Marion about being in the elevator with Petitioner "at all that day," B.A. responded, "I don't remember." T. 105-06. Counsel further elicited that Detective Waters lived in B.A.'s neighborhood and knew B.A.'s mother because B.A.'s mother worked at City Hall. He also elicited that B.A. did not "press charges" until Detective Waters contacted her on July 12, 2007. T. 109-10. During cross-examination of Petitioner's mother, counsel elicited that the reason B.A. did not press charges until July 12, 2007, is because B.A.'s mother did not let her. T. 234-35.

**B. Procedural History**

On July 18, 2007, the Westchester County Grand Jury charged Petitioner with Burglary in the Second Degree, three counts of Sexual Abuse in the First Degree, Unlawful Imprisonment in the First Degree, and Stalking in the Fourth Degree. D.E. 9, Ex. 1. On June 3, 2008, a Judgment was rendered in the Supreme Court of the State of New York, Westchester County, convicting Petitioner, after a jury trial, of Burglary in the Second Degree (NY Penal Law § 140.25), Unlawful Imprisonment in the Second Degree (NY Penal Law § 135.05), and Sexual Abuse in the First Degree (NY Penal Law § 130.65), and sentencing him to a determinate term of imprisonment of seven years to be followed by five years of post-release supervision. D.E. 2.

On or about October 6, 2008, Petitioner, represented by Richard Willstatter, Esq., filed a direct appeal in the Appellate Division, Second Department. D.E. 9, Ex. 2. Petitioner raised the following four claims: (1) the details of the complainant's "prompt outcry" were erroneously admitted, (2) Petitioner's right to confrontation was violated when Petitioner was prohibited from confronting the "outcry witness" with her failure to correct the complainant's statement to the police, (3) the exclusion of a police report was erroneous, and (4) Petitioner's sentence was harsh and excessive and reflected that Petitioner was punished for exercising his constitutional right to trial. *Id.* D.E. 9, Ex. 6. On or about December 2, 2008, the People submitted a brief in opposition. D.E. 9, E. 7. On or about December 22, 2008, Petitioner submitted a reply. D.E. 9, Ex. 8. In a decision and order dated June 30, 2009, the Appellate Division, Second Department, affirmed Petitioner's judgment of conviction. *People v. Bernardez,* 63 A.D.3d 1174 (2d Dept. 2009). The Appellate Division held that (1) Petitioner's claim regarding the prompt outcry testimony was "without merit," (2) Petitioner's claim that he was deprived of his right to cross-examine a prosecution witness was unpreserved and, in any event, without merit, (3) Petitioner's

claim regarding the police report was unpreserved and, in any event, without merit, and (4) Petitioner's claim that he was "penalized" for choosing to go to trial was without merit, and Petitioner's sentence was not excessive. *Id.* On September 17, 2009, an Associate Justice of the New York State Court of Appeals denied Petitioner's application for leave to appeal. *People v. Bernardez,* 13 N.Y.2d 794 (2009).

On or about March 29, 2010, Petitioner, represented by Gonul Aksoy, Esq., and Mr. Willstatter, moved in the Supreme Court, Westchester County, pursuant to NYCPL § 440.10, to vacate his judgment of conviction on the ground that Petitioner's trial counsel, David Ortiz, Esq., was ineffective. D.E. 9, Ex. 11. Accompanying Petitioner's motion was an affirmation from Mr. Willstatter, in which he affirmed that he had spoken with Ortiz on several occasions and that Ortiz had informed him that (a) Petitioner's trial was Ortiz's first trial, (b) Ortiz had been practicing law for less than one year at the time of the trial, (c) at the time of trial Ortiz was "unfamiliar with the need to preserve the record for appellate review," (d) if Ortiz believed an objection would be denied he "saw no purpose in making them," (e) Ortiz interpreted the court's ruling that the entire police report would not be admitted into evidence as meaning that none of the report would be permitted and that further argument would be rejected, (f) Ortiz did not make an offer of proof with respect to his attempt to impeach Fields because he believed it would be denied, (g) Ortiz did not object to B.A.'s testimony that she told her story to Detective Waters because he believed that the trial court had already ruled the evidence to be admissible and that objecting would highlight it for the jury, (h) Ortiz was surprised to learn that prompt outcry evidence is not admissible for its truth and that a limiting instruction could have been requested to that effect. *Id.* On or about April 6, 2010, the People submitted a response in opposition.

D.E. 9, Ex. 12.  In a Decision and Order dated June 28, 2010, the court (Zambelli, J.) denied

Petitioner's motion.  D.E. 9, Ex. 13.

On September 13, 2010, the Appellate Division, Second Department, granted Petitioner's

application for leave to appeal from the denial of his NYCPL § 440.10 motion.  D.E. 9, Ex. 16.

On or about January 4, 2011, Petitioner, represented by Mr. Aksoy, filed a brief in the Appellate

Division, asserting that the court had erred in denying Petitioner's NYCPL § 440.10 motion.

Specifically, Petitioner argued that counsel (1) failed to lay the proper foundation to impeach

B.A. with her prior inconsistent statement, and then failed to preserve the issue for appellate

review, (2) failed to explain the basis for his proposed cross-examination of Fields regarding her

failure to correct B.A.'s statement to the police and thereby failed to preserve the issue of

Petitioner's Sixth Amendment right to confront her, (3) failed to object when B.A. testified that

she had told Detective Waters the "whole" story, in contravention of the court's pre-trial ruling

"that the People were limited to B.A.'s complaint to Fields as its prompt outcry evidence," (4)

failed to object during summation when the People "essentially argued that B.A. was telling the

truth because she repeated the same story to multiple individuals," and (5) failed to request a

limiting instruction regarding the prompt outcry evidence.  D.E. 9, Ex. 17.

On June 14, 2011, the Appellate Division affirmed the court's denial of Petitioner's

NYCPL § 440.10 motion.  *People v. Bernardez,* 85 A.D.3d 936 (2d Dept. 2011).  With respect to

Petitioner's claim that counsel was ineffective in failing to offer into evidence B.A.'s prior

inconsistent statements, the Appellate Division held that "absent proof that the complainant

signed, prepared, or verified the accuracy of the police report or any portion of the police report,

the statements in the police report attributed to the complainant were not admissible as prior

inconsistent statements made by her regarding the subject incident."  *Id.* at 937.  The Appellate

Division further held that the police report was not admissible to demonstrate that B.A. failed to tell the police certain information. *Id.* With respect to Petitioner's claim that counsel failed to properly cross-examine Fields or make an offer of proof regarding the need for cross-examination, the Appellate Division held that counsel was "effective in placing the credibility of both the witness and the complainant at issue when he cross-examined them concerning their respective statements." *Id.* at 937-38. The Appellate Division further held that there was no merit to Petitioner's claim that counsel was ineffective because he failed to object to B.A.'s testimony that she told a detective the details of the incident because, "under the circumstances, the subject testimony constituted proper background information as to the events leading up to the defendant's arrest." *Id.* at 938. With respect to Petitioner's claim that counsel was ineffective in failing to object to the prosecutor's summation, the Appellate Division held that, "[u]nder the circumstances, the failure to object appears to have been a defense strategy to support the defendant's attempt to cast doubt on the complainant's credibility." *Id.* Lastly, the Appellate Division held that there was no merit to Petitioner's claim that counsel was ineffective in failing to request a limiting instruction regarding the prompt outcry evidence because, "during the final jury charge, the trial court instructed the jury regarding the proper use of 'prompt outcry' evidence, tracking the language of New York's Criminal Jury Instructions." *Id.* The court noted that counsel's "failure to object to the People's suggesting during their summation that the 'prompt outcry' evidence was direct proof of the defendant's guilt did not constitute ineffective assistance of counsel, since it must be presumed that the jury followed the trial court's subsequent instruction to the contrary, alleviating any alleged prejudice to the defendant." *Id.*

On July 6, 2011, Petitioner sought leave to appeal to the New York State Court of Appeals. Petitioner argued that (1) the Appellate Division's determination that B.A.'s statements

in the police report were inadmissible absent proof of verification by B.A. was in contravention of New York State law and the Appellate Division "failed to rule on counsel's failure to adduce other prior inconsistent statements," (2) counsel failed to properly cross-examine Fields or make an offer of proof regarding his proposed cross-examination, (3) the Appellate Division's determination that the testimony regarding B.A.'s statement to Detective Waters was proper background information was in contravention of New York State law, (4) the Appellate Division erroneously concluded that counsel had a strategic basis for failing to object to the prosecutor's summation, and (5) the standard CJI charge on prompt outcry evidence provided by the court was erroneous and should be corrected by the Court of Appeals.  D.E. 1, Ex. 6.  On September 14, 2011, Judge Read denied Petitioner's application for leave to appeal.  *People v. Bernardez*, 17 N.Y.3d 857 (2011).

On or about May 31, 2012, Petitioner filed the instant petition.  D.E. 1.  The petition asserts that trial counsel was ineffective for the reasons previously raised in Petitioner's NYCPL § 440.10 motion.  Specifically, Petitioner asserts that (1) counsel failed to confront B.A. with critical inconsistencies and failed to introduce into evidence the relevant portions of the police report (D.E. 15, at 14), (2) counsel failed to cross-examine Fields on why she testified that B.A. told her that the incident happened in the apartment but failed to correct B.A.'s statement to the police that the incident happened in the elevator (D.E. 15, at 18), (3) counsel failed to object when the complainant testified to a second outcry to Detective Waters (D.E. 15, at 21), (4) counsel failed to request a limiting instruction regarding the prompt outcry evidence  (D.E. 15, at 23), and (5) counsel's cumulative errors fell below an objection standard of reasonableness and affected the outcome of the trial (D.E. 15, at 25).

On August 16, 2012, Respondent filed a response (D.E. 9). On October 31, 2012, Petitioner submitted a reply.

## DISCUSSION

### A. Applicable Law

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998), citing *Reed v. Farley*, 512 U.S. 339, 354 (1994). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court generally may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with § 2254(d).

Under AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B) (i) there is an absence of available State corrective process; or
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard*, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye*, 696 F.2d at 192. A claim that has not been "fairly presented" in state court is procedurally defaulted and is precluded from federal habeas review, unless Petitioner can show cause for the default, and prejudice resulting from the alleged violation of federal law, or that a fundamental miscarriage of justice will occur if the claim is not considered. *Coleman*, 501 U.S. at 750; *Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Circ. 2005). Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. *Klein*, 667 F.2d at 282. Where a petitioner fails to present his or her federal

constitutional claim to the highest state court, the claim cannot be considered exhausted. *Id.* (citing *Williams v. Greco*, 442 F.Supp. 831, 833 (S.D.N.Y. 1977)).

There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. *See id.*; *see also Johnson v. Metz*, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to NYCPL § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. *Klein*, 667 F.2d at 282-83. A petitioner "need not have invoked every possible avenue of state court review." *Galdamez*, 394 F.3d at 73. Instead, a petitioner must give the state courts "one full opportunity" to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court unless he or she can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks and citations omitted).

## B. Petitioner's Habeas Claims

Petitioner claims that his trial counsel was ineffective and raises various arguments in support of that claim. In order to prevail on a claim of ineffective assistance under *Strickland v. Washington,* 466 U.S. 668 (1984), Petitioner must show that his counsel's representation was "fundamentally defective" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466

U.S. at 687.  Satisfying this burden is particularly difficult in the habeas context because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 88 (2011).  Both AEDPA and *Strickland* standards are "highly deferential," and "when the two apply in tandem, review is 'doubly' so."  *Id.* at 105 (citations omitted).  "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

Here, the record reveals that Petitioner's appellate counsel had a conversation with trial counsel "[o]n several occasions including most recently on February 15, 2010[.]" D.E. 9, Ex. 11, at p. 4.  There is no indication that these conversations were recorded in any way.[7]  Petitioner's appellate counsel affirms that trial counsel stated that in February, 2008, when this trial took place, he had only been admitted to the practice of law for less than one year.  This was counsel's first trial.  Further, the trial record suggests that counsel was handling this trial without any direct supervision in the courtroom, although there is no way of knowing whether he had informal supervision or assistance, either by observers in the courtroom or by attorneys providing advice after hours.  Counsel's apparent lack of experience was highlighted on occasion, such as when the court admonished counsel that his "inexperience shows in something like that," after counsel alerted the court at 2:00 PM that he intended to call character witnesses that same afternoon. Counsel also appeared unfamiliar with how to lay a proper foundation for the introduction of

---

[7] No explanation has been offered for Petitioner's failure to get a sworn statement directly from trial counsel. Although hearsay may, in some circumstances, be considered by a court reviewing a NYCPL § 440.10 motion, in the context of an ineffective assistance of counsel claim, "the New York courts have expressly stated that *either* an affidavit from counsel *or* an explanation why such an affidavit is not available is acceptable." *Jenkins v. Green*, 630 F.3d 298, 303 (2d Cir. 2010), *citing People v. Morales*, 58 N.Y.2d 1008 (1983) (emphasis in original; parallel citations omitted). Neither of those was provided in this case, and the New York courts apparently accepted the hearsay proffered by appellate counsel, in part, as the basis for their decisions.

character witnesses. Appellate counsel's affirmation, in summary fashion, states that trial

counsel "related that… at the time of the trial, he was unfamiliar with the need to preserve the

record for appellate review[.]" *Id.* This summary statement, which is not a quote but is a version

prepared by appellate counsel for the NYCPL § 440.10 motion, appears somewhat troubling, but

it cannot be considered in a vacuum. Appellate counsel's affirmation reveals that trial counsel

reported that rather than preserving the record for appellate review, he "focused instead on

whether he could convince the trial court to grant his objections and requests." *Id.* at pp. 4-5.

This, as the Appellate Division expressly found in the context of counsel's failure to object to

certain portions of the prosecutor's summation, "appears to have been a defense strategy…." D.E.

9, Ex. 20. In the context of another issue raised in the petition, the failure of trial counsel to

object to B.A.'s testimony that she had repeated her story to a police detective, Judge Zambelli

concluded:

> Clearly, trial counsel's failure to object to this testimony was
> strategic in that he wished to draw no further attention to it because
> it was not perceived as helpful to his client. As defendant herein
> has failed to demonstrate the absence of a strategic explanation for
> his counsel's alleged failure, it is "presumed that counsel acted in a
> competent manner" (*see* People v. Taylor, 1 N.Y.3d 174, 176
> (2003)). Mere losing tactics must not be confused with
> ineffectiveness and a contention of ineffective assistance of trial
> counsel requires proof of less than meaningful representation
> rather than simple disagreement with strategies and tactics (*People
> v. Satterfield*, 66 N.Y.2d 796, 798-99 (1985); *People v. Baldi*, 54
> N.Y.2d 137, 146-147 (1981)).

D.E. 9, Ex. 13 at p. 11.

Although counsel's performance at trial was not a model of advocacy, it did satisfy the

standard for effective assistance. Thus, for the reasons stated below, under the doubly deferential

standard pursuant to which this court must review the Appellate Division's merit-based

determinations in this case, the undersigned cannot conclude that the Appellate Division's

finding that Petitioner received the effective assistance of counsel was contrary to or involved an unreasonable application of *Strickland*.

    **i.**        **Petitioner's Claim Regarding B.A.'s Prior Inconsistent Statements**

Petitioner asserts that counsel was ineffective because he failed to confront B.A. with her prior inconsistent statements as reflected in a police report. D.E. 15, at 14. At trial, B.A. testified that Petitioner had followed her into her home, forcibly held her, touched her breasts over her clothing and had then inserted his finger into her vagina. T. 55-58. The police report prepared by Officer Marion, however, reflected that B.A. had told Officer Marion that Petitioner kissed her on the lips and touched her all over her body over her clothing in the elevator. The report further reflects that, according to B.A., after B.A. had entered her apartment, she noticed that Petitioner had also entered the apartment and, when B.A. asked Petitioner to leave, he had complied. D.E. 9, Ex. 11; police report.

During cross-examination, counsel asked B.A. whether she had told Officer Marion that Petitioner had attacked her in the elevator and Petitioner answered, "no." Counsel further inquired whether she had told Officer Marion "about being in the elevator with [Petitioner] at all that day," and B.A. answered, "I don't remember." Counsel also asked B.A. whether she had told Officer Marion that Petitioner "touched her over the clothes but not under," and B.A. answered, "yes." T. 105-06. Given this testimony and the information contained in the police report, Petitioner faults counsel for (1) failing to introduce the portions of the police report with which he confronted B.A., and (2) failing to cross-examine B.A. with respect to whether she informed Officer Marion that when she told Petitioner to leave her apartment he did, and on why she did not inform the police that force was used. D.E. 15, at 15.

With respect to the first argument, the Appellate Division held that there "is no merit to the defendant's claim that trial counsel's failure to offer into evidence the complainant's alleged prior inconsistent statements, as contained in a certain police report regarding the subject incident deprived him of the effective assistance of counsel," because "absent proof that the complainant signed, prepared, or verified the accuracy of the police report or any portion of the police report, the statements in the police report attributed to the complainant were not admissible as prior inconsistent statements made by her regarding the subject incident." *Bernardez*, 85 A.D.3d at 937. This determination rested on a state rule of evidence and only cited state cases. This Court cannot find counsel ineffective for not introducing evidence that New York State's Appellate Division determined was inadmissible under New York State law.[8] Although the case of *People v. Mullings*, 83 A.D.3d 871 (2d Dept. 2011), suggests the existence of a possible split within the Second Department regarding the admissibility of prior inconsistent statements contained in police reports, this Court need not attempt to reconcile these potentially conflicting lines of cases, particularly when a judge of the New York State Court of Appeals, when faced with this exact issue, did not grant Petitioner leave to appeal.[9] In any event, the crux

---

[8] Notably, the rule relied upon by the Appellate Division comports with federal evidentiary principles, which prohibit the introduction of a third party's notes of a witness's statement unless the statement is endorsed by the witness or the notes are a verbatim transcript of the statement. *See U.S. v. Almonte*, 956 F.2d 27, 28 (2d Cir. 1992); *U.S. v. Rubin/Chambers, Dunkill Ins. Services*, 828 F. Supp.2d 698 (S.D.N.Y. 2011) ("The Government properly points out—and Defendants do not contest—that the notes and reports may not be admitted as prior inconsistent statements of the cooperating witnesses because the notes and reports have not been endorsed by the cooperating witness and do not represent a 'verbatim transcript of the witness's own words' "). Therefore, as a matter of federal law, any claim that the trial court's exclusion of this evidence deprived Petitioner of a fair trial fails. Accordingly, Petitioner was not deprived of a fair trial by the exclusion of the report or portions thereof. *See Rosario v. Attorney General of New York*, No. 00 Civ. 6681 (LAK)(AJP), 2011 WL 267641, at *10 (S.D.N.Y. March 19, 2001).

[9] In *Mullings*, which was decided before *Bernardez*, the Appellate Division stated that "[a] police report should be admitted into evidence where, as here, 'it indicates that the source of the information contained in it was the complaining witness,' and that information is inconsistent with the testimony of the complaining witness." *Mullings*, 83 A.D.3d at 871 (citations omitted).

of B.A.'s statements in the police report were presented to the jury through the testimony of
Officer Marion. Thus, even if trial counsel should have attempted to offer portions of the report
into evidence, it cannot be said that the result of the trial would have been changed by such
evidence.

With respect to Petitioner's claim that counsel failed to cross-examine B.A. by
confronting her with certain prior inconsistent statements, the Appellate Division held that
counsel was effective in "placing the credibility of both the witnesses *and the complainant* at
issue when he cross-examined them concerning their respective statements." *Bernardez,* 85
A.D.3d at 938 (emphasis added). The court further noted that the "police report was not
admissible to demonstrate that the complainant failed to tell the police certain information about
the subject incident." *Bernardez,* 85 A.D.3d 937. These determinations were not contrary to or
inconsistent with *Strickland.*

Counsel did cross-examine B.A. with respect to the two pivotal inconsistencies between
her testimony and the police report – whether she had told Officer Marion that the attack
occurred in the elevator and whether she had told Officer Marion that Petitioner touched her over
her clothing but not under. T. 105. Petitioner denied the former and admitted the latter. Further,
counsel established through Officer Marion and Sherine Fields that Petitioner had told Officer
Marion that the attack occurred in the elevator. During his closing, counsel argued, in a cogent
fashion, that these inconstancies rendered B.A. incredible. He further argued that on June 24,
2007, "she described to the cops an incident that was limited to touching, kissing inside the
elevator and as a result of that report [Petitioner] was let go, he was not arrested. The reason he is
here is because on July 12 there was a different accusation of [Petitioner] which claimed that he
actually assaulted [B.A.] inside her apartment...." T. 339-41. This closing argument, and the

direct and cross-examinations upon which it relied, placed before the jury the crux of the inconsistency between B.A.'s testimony and the police report as described by Petitioner in his instant petition. The fact that counsel did not specifically question B.A. about whether she had informed Officer Marion that when she told Petitioner to leave her apartment, he complied, or about why the police report did not reflect that B.A. had specifically informed Officer Marion that Petitioner used force, hardly renders counsel ineffective. Counsel's questioning regarding the location of the attack and whether Petitioner had touched B.A. over or under her clothing were far stronger bases for cross-examination given the nature of the charges, and necessarily implied that the attack did not occur in the apartment and that Petitioner did not insert his finger into B.A.'s vagina. Further, it is far from clear that, under New York law, counsel would have been permitted to question B.A. about an omission in the police report regarding whether force was used. *See People v. Green,* 110 A.D.3d 827 (2d Dept. 2013), citing *People v. Bornholdt,* 33 N.Y.2d 75, 88 (1973) ("a witness may not be impeached simply by showing that he [or she] omitted to state a fact, or to state it more fully at a prior time. It need also be shown that at the prior time the witness' attention was called to the matter and that he [or she] was specifically asked about the facts embraced in the question propounded at trial"). Accordingly, this Court is unable to conclude under the deferential standards of *Strickland* and AEDPA that counsel's cross-examination fell below an objective standard of reasonableness or that, had counsel asked the questions proposed by Petitioner, there is a reasonable probability that the result of Petitioner's trial would have been different.

ii.     **Petitioner's Claim Regarding Counsel's Cross-Examination of Sherine Fields.**

Petitioner claims that counsel's cross-examination of Sherine Fields – the People's prompt outcry witness – was ineffective. D.E. 15, at 18-20.[10] During cross-examination, Fields testified that (1) B.A. had told her that the attack took place inside of B.A.'s apartment, and (2) B.A. had later told the police that Petitioner touched B.A. in the elevator and that, after entering her apartment, she turned around and saw that Petitioner was in her apartment as well. T. 152, 159-60. Petitioner asserts that counsel's attempt to cross-examine Fields regarding why she did not correct B.A.'s statement to the police consisted of a series of questions "that could have been construed as improper as to form" and "ended in abysmal failure." Petitioner argues that counsel's cross-examination was lacking in "formulation and direction" and that counsel should have made an offer of proof to the court as to why this line of cross-examination was important. Petitioner asserts that if counsel had made such an offer of proof the court would have either granted the request, or the issue would have been preserved for appeal. D.E. 15, at 20. In rejecting this claim, the Appellate Division held that:

> Further, under the circumstances, there is no merit to the defendant's claim that trial counsel was ineffective for failing to properly cross-examine the People's witnesses who testified regarding the complainant's 'prompt outcry' as to why the witness failed to correct the complainant's statement to the police to the extent that the statement differed from her initial complaint, or to make an offer of proof regarding the need for such cross-examination. Trial counsel was effective in placing the credibility of both the witness and the complainant at issue when he cross-examined them concerning their respective statements.

---

[10] Under New York law, there is an exception to the general prohibition on the admissibility of hearsay pursuant to which "[e]vidence that a sexual assault victim promptly complained about the incident is admissible to corroborate the allegation that an assault took place." *People v. Caban,* 126 A.D.3d 808 (2d Dept. 2015), citing *People v. Rive,* 75 N.Y. 2d 929, 932 (1990).

*Bernardez,* 85 A.D.3d at 937-38 (citation omitted).  This determination was not contrary to or an unreasonable application of *Strickland.*

During his cross-examination of Fields, counsel elicited that (1) Fields believed that as a nurse, she was a mandatory reporter of sex crimes, (2) B.A. informed Fields that she was attacked in her apartment and, (3) in Fields' presence, B.A. informed the police that the attack occurred in the elevator.  The nature of these pieces of information, and the manner in which counsel elicited them, certainly alerted the jury to a potential inconsistency.  Thereafter, in his closing argument, counsel put these three pieces of testimony squarely before the jury and pointedly asked the jury to consider why Fields – who told B.A. that she was a mandatory reporter – did not correct B.A.'s statement to the police that the attack occurred in an elevator when, according to Fields, B.A. told Fields that the attack occurred inside B.A.'s apartment.  T. 340-41. . Counsel's questions, when coupled with counsel's summation, effectively placed the inconsistency before the jury.  Accordingly, there is no reasonable probability that had counsel formulated a non-objectionable line of questioning regarding Fields' failure to correct B.A.'s statement to the police, or made an offer of proof regarding the purpose of the proposed cross-examination, the result of the proceeding would have been different.  The jury was presented with this very inconsistency - which went unaddressed by the prosecutor in her summation – and still unanimously found Petitioner guilty.

In essence, Petitioner's first and second bases for his claim of ineffective assistance of counsel rest on the same operative argument – that counsel could have more effectively highlighted to the jury, through his cross-examination of B.A. and Fields, the inconsistency between B.A.'s testimony and her statement to the police and an alleged internal inconsistency in Fields' testimony.  Counsel, however, adequately presented these inconsistencies to the jury.

Whether counsel could have been even more effective if he had asked certain questions is not the inquiry required by *Strickland*. *Harrington v. Richter,* 562 U.S. 86, 110 (2011) ("*Strickland* does not guarantee perfect representation"). The question is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 105. Here, counsel was not incompetent under prevailing professional norms and there is no reasonable probability that had counsel engaged in the cross-examination now suggested by Petitioner, the result of Petitioner's trial would have been different.

Furthermore, Petitioner's assertion that counsel was ineffective because he failed to preserve this issue for appeal is without merit. When Petitioner asserted on direct appeal that the court improperly curtailed counsel's cross-examination of Fields, the Appellate Division held that Petitioner's "contentions" were unpreserved and, "in any event, are without merit." *Bernardez,* 63 A.D.3d 1174. Since the Appellate Division has already reviewed the claim and concluded that Petitioner's claim is without merit, there is no reasonable probability that if counsel had preserved the claim, the result of Petitioner's appeal would have been different. Moreover, Petitioner concedes in his instant Petition that counsel's line of questioning was, arguably, objectionable as to form. Therefore, the court's preclusion of counsel's line of questioning was, by Petitioner's admission, proper under the rules of evidence. An offer of proof by counsel would not have changed that ruling. Accordingly, under these circumstances, the Appellate Division's determination that counsel's failure to preserve this issue for appeal did not render him ineffective was neither contrary to nor an unreasonable application of *Strickland*.

### iii.    Petitioner's Claim that Counsel Failed to Object to a Second Outcry

Petitioner asserts that counsel was ineffective for failing to object to B.A.'s testimony that she had told Detective Waters "the whole story of what happened and when it happened and every detail...." T. 96. Petitioner argues that this testimony amounted to a second prompt outcry, which was inadmissible under the prompt outcry doctrine. D.E. 15, at 21. In rejecting this claim, the Appellate Division held that there was "no merit to the [Petitioner's] claim that he was deprived of the effective assistance of counsel by trial counsel's failure to object, on the ground of impermissible bolstering, to the complainant's testimony that she told a certain detective the details of the subject incident since, under the circumstances, the subject testimony constituted proper background information as to the events leading up to the defendant's arrest." *Bernardez,* 85 A.D.3d 938. This determination was not contrary to or an unreasonable application of *Strickland.*

The prompt outcry doctrine is a New York State evidentiary doctrine. Further, the Appellate Division's determination that B.A.'s testimony regarding her statement to Detective Waters constituted permissible background information "as to the events leading up to the defendant's arrest" relied on a New York State hearsay exception and was supported by New York State case law. Indeed, the New York State Court of Appeals has recently reaffirmed the principle that "[a] prior consistent statement may be admissible when it is offered not for its truth, but for some other relevant purpose, for example to assist in 'explaining the investigative process and completing the narrative of events leading to the defendant's arrest.' " *People v. Gross,* 26 N.Y.3d 689 (2016). Further, while B.A. testified that she had told Detective Waters the "whole story of what happened and every detail," she did not testify regarding what details she related to Detective Waters. Similarly, Detective Waters did not testify about the details of

what B.A. had told her.  Since the Appellate Division held that B.A.'s testimony was admissible

under a cognizable, New York State evidentiary exception to the hearsay rule, its determination

that counsel was not ineffective for failing to object to that testimony was not contrary to or an

unreasonable application of *Strickland*.

Petitioner further asserts that counsel was ineffective in failing to object to that portion of

the prosecutor's summation in which she argued that B.A. described "in detail" to Detective

Waters what had happened to her and that "[B.A.] gave the same account [to Waters] that she

gave to Sherine Fields and she gave to you on that witness stand."   D.E. 15, at 21-22; T. 358.

Petitioner asserts that "this argument was wholly improper because it urged the jury to rely on

B.A.'s statement to the detective to convict."  *Id.*  In rejecting this claim, the Appellate Division

held that:

> The defendant claims that trial counsel was ineffective for failing to
> object to the prosecutor's remarks during her summation suggesting
> that the complainant was telling the truth about the subject incident
> because she had repeated the same story to numerous persons,
> including a certain detective. Under the circumstances, the failure to
> object appears to have been a defense strategy to support the
> defendant's attempt to cast doubt on the complainant's credibility.

*Bernardez,* 85 A.D.36 938.  This holding does not explain how the Appellate Division reached

its conclusion that counsel's failure to object was part of a defense strategy to cast doubt on

B.A.'s credibility.  Additionally, although Petitioner raised the instant claim in his NYCPL §

440.10 motion (D.E. 9, Ex. 11, at 17), his brief in the Appellate Division (D.E. 9, Ex. 17, at 36),

and in his instant Petition, Respondent has failed to directly address this claim in any of its

responses.

In context, however, the only plausible interpretation of the Appellate Division's decision

is that the "defense strategy" referenced by the Appellate Division was counsel's desire not to

highlight this issue for the jury. D.E. 9, Ex. 11.[11] This interpretation is supported by the fact that Petitioner's claim that counsel should have objected to B.A.'s testimony about her statement to Detective Waters was closely intertwined with his claim that counsel failed to object to the prosecutor's summation, and both arguments were contained in the same point heading in Petitioner's appellate brief. Respondent, in its response to that point heading, argued, in part, that counsel's explanation that he did not object to B.A.'s testimony regarding Detective Waters because he did not want to highlight the testimony for the jury amounted to reasonable strategy. The Appellate Division appears to have relied on this argument.

Notwithstanding the Appellate Division's conclusions, the record before this Court does raise some concerns. In trial counsel's post-conviction statements, which were incorporated into Petitioner's NYCPL § 440.10 motion through an affirmation of appellate counsel, trial counsel is reported to have explained that he "was unfamiliar with the need to preserve the record for appellate review." D.E. 9, Ex. 11. Counsel was also "surprised to learn that 'prompt outcry' evidence was not admissible for its truth[.]" *Id.* The affirmation also reported that trial counsel had related that he believed that the court had already ruled that B.A.'s statements to the detective were admissible – which it had not – and, therefore, if counsel had objected, the objection would have been overruled and would have highlighted B.A.'s statements. *Id.* These reported assertions would seem to undermine the conclusion that counsel's decision not to object to the prosecutor's summation was based on a coherent strategy. It appears, based on these after-the-fact statements, that counsel's decision not to object to B.A.'s testimony was likely based, at least

---

[11] As part of Petitioner's NYCPL § 440.10 motion he submitted an affirmation from his appellate attorney, Mr. Willstatter. In that affirmation Mr. Willstatter affirmed that he had spoken to Petitioner's trial counsel on several occasion and counsel had related that he did not object to B.A.'s testimony about telling her story to the detective, in part, because he did not want to highlight the testimony. D.E. 9, Ex. 11. Appellate counsel's affirmation, however, does not include any statement from trial counsel about why counsel did not object to the summation.

in part, on several erroneous assumptions.  If counsel has been aware of the need to preserve issues for appeal, known that prompt outcry evidence could not be admitted for its truth, and realized that the court had not already ruled on the propriety of B.A.'s testimony regarding Detective Waters, he may have arrived at a different conclusion and objected to the prosecutor's summation remarks.

Despite these concerns, for this Court to find that the Appellate Division unreasonably applied *Strickland,* it "must uncover an 'increment of incorrectness beyond error.' " *Rosario v. Ercole,* 601 F.3d 118, 126 (2d Dept. 2010), citing, *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000).  "Simply disagreeing with the outcome is insufficient." *Id.*  On this record, a reasonable jurist could conclude that defense counsel chose not to object because objecting would highlight the issue for the jury and thereby detract from counsel's overall attempt to discredit B.A..  Accordingly, the Appellate Division's determination that counsel's decision not to object was based on a reasonable defense strategy was not an objectively unreasonable application of *Strickland.  See Bierenbaum v. Graham*, 607 F.3d 36, 57-58 (2d Cir. 2010) (trial counsel's failure to object to summation remark in order to avoid highlighting the issue to the jury was a reasonable strategy).[12]

---

[12] At trial, B.A. did not provide any detail regarding what she had specifically told Detective Waters, and when Detective Waters testified, she simply stated that B.A. had told her "what happened" without providing any details.  Prior to the summations, the Court charged the jury that "nothing that counsel may say in their summation is evidence in this case," and that it is the jury's memory of the evidence that controls.  T. 332-34. The jury is presumed to have followed this instruction. *Greer v. Miller,* 483 U.S. 756, 767 n. 8, 107 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence ..., unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions") (citation omitted). Accordingly, to the extent that the prosecutor's summation bolstered B.A.'s testimony, there is no reasonable probability that if counsel had objected and the court had sustained the objection, the result of Petitioner's trial would have been different.

#### iv.  Petitioner's Claim that Counsel Failed to Request a Limiting Instruction

Petitioner also argues that counsel was ineffective in failing to request that the court issue a limiting instruction to the effect that B.A.'s prompt outcry testimony was only admissible to "corroborate that an assault took place; it may not be considered for the truth of the matters asserted." D.E. 15 at 23.  Petitioner asserts that, as a result of this failure, the jury necessarily and improperly relied on the truth of B.A.'s statements to Fields and Detective Waters.  *Id.*  In rejecting this claim, the Appellate Division held as follows:

> Finally, there is no merit to the defendant's claim that he was deprived of the effective assistance of counsel by trial counsel's failure to request a limiting instruction that the 'prompt outcry' evidence was admitted only to show that a complaint was made, not for its truth. Although trial counsel failed to ask for such a limiting instruction when the People introduced the 'prompt outcry' evidence, ultimately, during the final jury charge, the trial court instructed the jury regarding the proper use of 'prompt outcry' evidence, tracking the language of New York's Criminal Jury Instructions (CJI.2d [NY] Prompt Outcry; *see People v. Spicola,* 16 N.Y.3d 441, 922 N.Y.S.2d 846, 947 N.E.2d 620; *see also People v. Brooks,* 71 A.D.3d 1043, 1043, 896 N.Y.S.2d 881; *see generally People v. Grant,* 297 A.D.2d at 350, 746 N.Y.S.2d 401). Trial counsel's failure to object to the People's suggesting during their summation that the "prompt outcry" evidence was direct proof of the defendant's guilt did not constitute ineffective assistance of counsel, since it must be presumed that the jury followed the trial court's subsequent instruction to the contrary, alleviating any alleged prejudice to the defendant (*see People v. Ferrer,* 245 A.D.2d 569, 570, 666 N.Y.S.2d 508; *People v. Lugo,* 218 A.D.2d 711, 711, 630 N.Y.S.2d 370).

*Bernardez,* 85 A.D.3d 938.  This finding was not contrary to or an unreasonable application of *Strickland.*

In its final charge to the jury, the court stated that the jury:

> may consider whether [B.A.] complained of the crime promptly or within a reasonable period of time after the alleged commission. If… you find the complaint was made promptly or within a reasonable time, you may consider whether and to what extent if any that fact tends to support the believability of her testimony. If

27

> you find that the complaint was unreasonably delayed you may
> consider whether and to what extent, if any, that fact tends not to
> support the believability of her testimony.

T. 374. The Appellate Division's conclusion that this instruction apprised the jury of the proper

use of prompt outcry testimony under New York law was objectively reasonable in that it

specified that the testimony could be considered for the purpose of the "believability" of B.A.'s

testimony and it tracked New York's pattern jury instruction. Moreover, it is telling that

Petitioner has been unable to identify a single state or federal case in which an attorney was

deemed ineffective for failing to request a limiting instruction regarding prompt outcry evidence.

In any event, the Appellate Division also concluded that B.A.'s testimony that she had "told a

certain detective the details of the subject incident... constituted proper background information

as to the events leading up to the defendant's arrest." *Bernardez*, 85 A.D.3d at 938. Further,

Petitioner does not assert that the testimony regarding B.A.'s prompt outcry to Sherine Fields

exceeded the permissible scope of prompt outcry testimony. Indeed, Petitioner asserts that "the

People were permitted to elicit such details." D.E. 15 at p. 23. Accordingly, the absence of a

specific limiting instruction regarding the permissible use of the outcry evidence was harmless.

*See Newborn v. Smith*, No. 09 Civ. 4844 (SJF), 2013 WL 504391, at fn. 5 (E.D.N.Y. Feb 2013)

("To the extent that petitioner is challenging the absence of a specific limiting instruction

regarding the permissible use of the outcry evidence, the error was harmless in light of the fact

that the outcry witnesses' testimony at trial did not exceed its permissible scope.").

### v.      Petitioner's Claim Regarding the Cumulative Effect of Counsel's Errors

Petitioner asserts that the cumulative effect of counsel's errors rendered counsel

ineffective. D.E. 15, at 25. The Second Circuit has instructed that in assessing a claim of

ineffective assistance of counsel under *Strickland*, a reviewing court must consider counsel's

errors in the aggregate. *See Lindstadt v. Keane*, 239 F.3d 191, 1999 (2d Cir. 2001). A necessary pre-requisite to this analysis is the existence of more than one error to aggregate. Here, as stated *supra,* it was objectively reasonable for the Appellate Division to determine that (1) the police report was inadmissible, (2) counsel was "effective in placing the credibility of both the witness and the complainant at issue when he cross-examined them concerning their respective statements" (*Bernardez,* 86 A.D.3d 938), (3) the alleged second prompt outcry testimony was admissible as proper background information, and (4) the court's charge apprised the jury of the proper use of prompt outcry evidence. The only potential error committed by counsel was his failure to object to the prosecutor's summation remarks and, for the reasons stated, the state court's rejection of Petitioner's claim with respect to that potential error was not contrary to or an unreasonable application of *Strickland.* Accordingly, since Petitioner can only establish, at most, one error committed by counsel, his claim that the cumulative effect of counsel's errors rendered counsel ineffective necessarily fails.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the petition should be dismissed in its entirety. Since Petitioner's claims present no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M. Karas, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extensions of time to file objections must be made to Judge Karas.

Dated:  June 9, 2016
        White Plains, NY

                                        Respectfully submitted,

                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York